## McCoy's Administrator v. Williamson & Pond Creek Railroad Company.

(Decided February 23, 1917.)

### Appeal from Pike Circuit Court.

Railroads—Operation—Injury to Person on Bridge—Trespassers—Licensees—Liability.—Where a railroad bridge is not adapted to the use of pedestrians and there are sign boards warning the public not to go upon it, members of the public who, for their own convenience, use the bridge as a footway, are trespassers, and their status is not changed to that of licensees by the frequency or extent of such trespassing.

FLANERY & HARRIS and STATON & PINSON for appellant.

J. R. JOHNSON, JR., HOLT, DUNCAN & HOLT and THEODORE W. REATH for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action against the Williamson & Pond Creek Railroad Company by the administrator of Willie McCoy, deceased, to recover damages for his death, the

trial court sustained defendant's motion for a peremptory instruction. Judgment was entered accordingly and plaintiff appeals.

The Williamson & Pond Creek Railroad runs down Pond Creek in Pike county, and after crossing Tug river, connects with the Norfolk & Western Railway in the city of Williamson. The Williamson & Pond Creek Railroad maintains a bridge across Tug river. This bridge is a single track railroad bridge, without any walkway for pedestrians, and at each end thereof is a warning board notifying the public not to trespass thereon. The bridge is about 100 yards long and, except at the piers, is not wide enough to enable a pedestrian to stand on the end of the ties and escape injury from a passing train. The Kentucky end of the bridge is in Leckieville, a small village, and the West Virginia end curves down the Tug river and extends into the Norfolk & Western's yards and East Williamson. The death of decedent took place under the following circumstances: On the evening of March 11, 1914, decedent and four companions went from Leckieville to the city of Williamson to attend a theater. On their return, about 10:30 o'clock, they stopped at the West Virginia end of the bridge and looked and listened for a train. Not hearing any, they started across the bridge. The three companions of decedent, who were in front, reached the Kentucky side in safety. The decedent and a young girl about sixteen years of age, when within 20 or 30 feet of the end of the bridge, were struck by a train and killed. According to the evidence for plaintiff, the train consisted of thirteen cars with the engine in the rear, and was being backed across the bridge at the rate of about twenty-five miles per hour. While Leckieville is a small village, the city of Williamson contains 7,000 or 8,000 people, and from 500 to 800 people cross the bridge each day. About 50 feet from the end of the bridge on the Kentucky side the railroad company maintains a station, and there is a public road crossing the railroad at that point. Plaintiff introduced several witnesses to establish the fact that there was a great deal of travel to and from the station and over the public road and throughout the yards of the defendant. It was also shown that no warning of the approach of the train to the railroad yards, located about three-quarters of a mile from the Kentucky end of the bridge, or to the

station and public road crossing, or to the bridge, was given, and that the defendant's agents failed to keep a lookout and have the train under reasonable control. Clearly the duty of the company with respect to persons in its yards, or at the public road crossing, and its failure to perform its duty at those places, have no bearing on plaintiff's right to recover in this case, for the very simple reason that decedent was not at those places when struck and killed. The evidence fails to show that decedent's death could have been avoided by the exercise of ordinary care after his peril was discovered. That being true, plaintiff's right of recovery depends on whether or not the railroad company owed decedent the duty of keeping a lookout, of giving warning of the approach of the train, and of having the train under reasonable control, and this question turns on whether or not decedent was a trespasser or a licensee, whose presence on the bridge should have been anticipated. We have recently had occasion to consider this question in several cases, and it may now be stated as the established rule in this State that members of the public who use a railroad bridge for their own convenience are trespassers, and that their status as such cannot be changed to that of licensees by the frequency or extent of such trespassing. Curd's Admr. v. C., N. O. & T. P. Ry. Co., 163 Ky. 105, 173 S. W. 335; Fields v. L. & N. R. R. Co., 163 Ky. 673, 174 S. W. 41; C. & O. Ry. Co. v. Stephens' Admr., 168 Ky. 775, 182 S. W. 938. There is every reason why this rule should apply to the facts of this case. The bridge was not adapted to the use of pedestrians. Except at the piers, there was no place on the ties outside of the track where a pedestrian could stand and avoid injury by a passing train. At each end of the bridge there were sign boards warning the public not to use the bridge. It will thus be seen that the public were not only warned by sign boards of the danger, but the very construction of the bridge itself was sufficient to apprise persons of ordinary prudence of the great danger of using it as a footway. It cannot, therefore, be said, that the company acquiesced in using the bridge as a highway for footmen. On the contrary, it did everything in its power to prevent such use. It follows that the trial court properly directed a verdict in favor of the defendant.

Judgment affirmed.